Garland, J.
delivered the opinion of the court.
This suit was commenced by attachment; the plaintiffs alleging the defendant is indebted to them in the sum of $6,833 43, with interest eight per cent, ■from the maturity of the note. S. S. Oobh & Co., and Ward, Moffitt & Co. were cited as garnishees. The sheriff in his return on the attachment, says, - he has seized sufficient property in their hands belonging to the defendant, to satisfy the debt, but does not say what it is. In their answers to the interrogatories propounded hy the plaintiffs, Ward, Moffitt & Co. say they have no knowledge of the defendant, and they have no property of his of any value, nor are they indebted to him, nor have they ever had any transaction with or knowledge of him. They further say, they have in their possession one hundred and fifteen bales of cotton marked J. E. Palmer which was shipped to them by and for and on account of Elliott & Worley, merchants of Mississippi, and they suppose the plaintiffs have been misled by the cotton of Elliott & Worley having the name Palmer on the hales.
On the 23d of April, 1840, nearly two months after these answers were filed, Elliott & Worley intervened and claimed the cotton as their property. On the 8th of June following, the cause came on for trial, when there was a final judgment against the defendant for the full amount of the note, the rights of the intervenors being reserved for future investigation. On this judg- [409] ment an execution issued, on which the sheriff returned that he had again levied on all the rights of the defendant in the hands of the garnishees. Early in December last, the claim of the intervenors came on for trial, when E. Moffitt, on of the firm who had answered the interrogatories, was sworn as a witness, and then stated that both Elliott & Worley had told him they had not purchased the cotton of Palmer, but had only made advances on it, but how much, neither of them could tell, as they had no statement of the amounts about them. Worley said that the proceeds of the one hundred and fifteen hales of cotton in possession of witness’s house, would about clear them, but Elliott came down some time after and said the advances would take all the cotton both in the hands of witness and Cobb & Oo. A good deal of testimony was taken on the trial, but the intervenors did not offer the slightest evidence they had purchased the cotton or advanced a dollar on it. It was proved they were forwarding merchants at Tchula, Mississippi, and the bill of lading is filed, in which it appears that this cotton was shipped with several *616 other lots to the appellants, to he delivered on their paying freight at the rate of $1 75 per hale, and $70 20 for charges., On the margin of the hill is written, “all for account of Elliott & Worley.” On this trial, a letter from the original defendant was received as evidence, in which he expresses surprise at his cotton being attached, and says Elliott & Worley have made an advance on it, but does not say how much. The trial terminated hy the intervenors discontinuing their claim.
A few days after this dismissal, the plaintiffs took a rule on the garnishees to show cause within ten days, why they should not pay over to them all the moneys in their hands, to be applied to the satisfaction of the judgment obtained hy the plaintiffs against the defendant. To this rule Ward, Moffit & Oo. made no answer, and it was made absolute on the 15th of January, 1841, and they were adjudged to pay “ the plaintiffs the amount of money in their [410] hands towards the satisfaction of the judgment obtained by plaintiffs against defendant:” S. S. Oobh & Oo., were also decreed to pay over the amount in their hands, with which judgment it is said they have complied.
Ward, Moffitt & Oo. appear to have paid no attention to the judgment against them, whereupon the plaintiffs, on the 22d of January, 1841, took another rule on them, requiring them within three days to file a statement of the number of hales of 'cotton attached in their hands, as the property of the’ defendant, Palmer, or if they have sold said cotton, then a detailed account of the proceeds. Eor answer to this rule, they exhibit an account of sales of the eotton, amounting to $2,738 91, which they-say they received as consignees of Elliott & Worley. They deny that Palmer is the owner of the cotton, they deny it was attached in their hands as his property, and relying upon their previous answers to interrogatories, they pray to be dismissed. On the 29th of January, 1841, three days after the filing of this answer, Elliott & Worley again intervened in the case, not claiming the cotton as their property, but alleging they had made advances on it, and have a higher privilege on the proceeds than the attaching creditor. They are not yet able to state the amount of their advances, but say they are over $6000, and they have lost the receipt given for the amount, hut hope to find it at some future day. They speak of an affidavit as to the verity of their allegations, the giving of a bond and praying for an injunction, hut they never have made the affidavit, filed the bond or obtained the injunction, and their petition of intervention stood over without any effort on their part to obtain evidence to sustain it, until the day previous to the trial of the issue between the plaintiff and garnishees; when one of the intervenors made an affidavit that he had material and important witnesses residing in Mississippi, without whose testimony he could not go to trial, yet he does not name any person or say what he expects to prove hy them, and there his efforts seem to have ended. On the 16th of Eebruary the case was tried, and the district judge gave judgment for the plaintiffs, from which the garnishees appealed.
[411] In this court their counsel has made numerous points to obtain a reversal of the judgment.
His two first grounds, that the inferior court erred in giving judgment in favor of the plaintiffs and against the defendant, is answered by a reference *617 to the well settled decisions of this court, that a garnishee has no right to interfere with the merits of the case, between plaintiff and defendant. 10 Martin’s Reports, 568.
Upon the third and fifth points; which allege that the proceedings against them are ex parte, upon the mere motion of the plaintiffs, without citation or notice, and therefore null and void; we have to remark, in relation to the first rule, the sheriff says in his return, that he served it on J. W. Ward, one of the firm of Ward, Moffitt & Co. but they did not choose to appear; as to the second, we do not find any citation, but the parties appeared and answered it, without objecting to a want of notice in the form of proceeding. On that rule, a trial took place, and the appellants were condemned to pay the money. We see no error in the proceedings of the court. The plaintiffs had a judgment against their original debtor; he did not complain of it, and all that was necessary, was to obtain a judgment or order to direct and authorize jhe garnishees to pay over whatever they had in their hands.
The fourth point is, there was no sufficient evidence to authorize a judgment against the appellants. It is difficult to conceive what better evidence could be obtained. It was held in the case of Robinson et al. v. Taylor et al. 6 La. Rep. 897, that the initials of the name of a party being on bales of cotton, was a circumstance, having weight in a question of ownership. If that be correct, and we think it is, the fact of a man’s name at full length on the bales is a circumstance entitled to much more weight. The claim of the intervenors alleging a right of property, had been dismissed, principally on the evidence of Moffitt, and no right could he shown although the claimants had nearly eight months to procure the testimony, which if it exists must be in their section of the country. The appellants knew the intervenors had [412] no right of property to the cotton, but only a claim of privilege, of which not the least evidence has been produced. The counsel contends we cannot look into the evidence of Moffitt given on a former trial to charge him in this. He does not appear to have objected to its use in the inferior court, nor has he shown us any law commanding us to close our eyes upon those admissions made under oath.
The last ground is, that the court erred in giving judgment against the garnishees whilst the intervention was pending. The Oode of Practice, art. 889, informs us that an intervention is permissive, and it must not retard the trial of the principal cause.' The intervenors must be always ready to plead and exhibit them testimony. Art. 891. In this case, we do not find the intervenors endeavoring to delay the trial, or complaining of the judgment rendered against the garnishees ; but they (the garnishees) manifest a most lively sensibility for these third parties, and endeavor to interpose them to avoid the payment of a sum of money that they do not pretend belongs to them, and which they have had more than a year without interest.
We have noticed in a number of the attachment cases that have come before us, that much of the litigation is to be traced to the garnishees; for what purpose, is not difficult to discover. We think it time to let it be known, that these manoeuvres have not escaped our observation, and we shah, as far as our powers go, use them to repress such practices.
*618 The judgment of the district court is therefore affirmed with costs, and ten per cent, damages.